Case 1:25-cr-20220-BB   Document 3   Entered on FLSD Docket 05/15/2025   Page 1 of 20

FILED BY\_\_\_\_TS\_\_\_\_D.C.
May 15, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## 25-20220-CR-BLOOM/ELFENBEIN
CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1957(a)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

CHARMAINE GATLIN,

        Defendant.

_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Jackson Health System and Jackson Health Foundation

1. Jackson Health System ("Jackson") was a nonprofit medical system that served Miami-Dade County. Jackson was funded through a sales tax, philanthropic contributions, and federal government programs, among other sources. Jackson was managed by the Public Health Trust of Miami-Dade County.

2. Jackson Health Foundation (the "Foundation") was established in 1991 and served as the fundraising arm of Jackson. Through donations, the Foundation helped fill the gaps of capital projects and programmatic needs of Jackson that were not financed by public support.

3. The Foundation was governed by a volunteer board of directors and paid executive leadership. Before October 1, 2023, the salaries of the Foundation employees were funded by

Foundation donations. After October 1, 2023, the salaries of the Foundation employees were funded by Jackson.

4. One way the Foundation solicited donations was through fundraising events.

**Defendant CHARMAINE GATLIN and Relevant Family**

5. **CHARMAINE GATLIN** served as the Chief Operating Officer ("COO") of the Foundation from in or around October 2014, until her termination in or around November 2024. Between 2018 and 2024, **GATLIN** received a base salary between approximately $185,000 and $290,000.

6. Between approximately October 2014, up until at least in or around November 2024, **CHARMAINE GATLIN** was a resident of Broward County, Florida.

7. In 2014, at the beginning of her employment, **CHARMAINE GATLIN** signed a conflict of interest policy with the Foundation acknowledging that: "An actual conflict of interest occurs when an employee is in a position to influence a decision that may result in personal gain for that employee or for a relative as a result of Jackson Memorial Foundation's fundraising operations." A relative was defined as "any person who is related by blood or marriage or whose relationship with the employee is similar to that of persons who are related by blood or marriage."

8. **CHARMAINE GATLIN** signed employment agreements acknowledging that the Foundation was "the fundraising arm of Jackson Health System" and that the Foundation conducted "philanthropic activities that benefit the medical programs and services of the health system."

9. According to **CHARMAINE GATLIN**'s employment agreements, the Foundation could terminate her for "engaging in any acts of fraud, theft, misappropriation or embezzlement with respect to the property of" Jackson or the Foundation.

10. **CHARMAINE GATLIN** had an email address at the Foundation. **GATLIN** also had a personal email address at Email Provider 1 ("Personal Email 1"). All of Email Provider 1's servers were located outside the state of Florida.

11. **CHARMAINE GATLIN** had a close relative who played competitive softball on travel teams in South Florida (Family Member 1), including Softball Team 1 and Softball Team 2.

12. **CHARMAINE GATLIN** had close relatives living in Riceboro, Georgia.

13. Religious Organization 1 was a religious organization based in Riceboro, Georgia.

### The Vendors

14. **CHARMAINE GATLIN** had the authority to approve invoices to vendors that provided goods and services for the Foundation, including at Foundation fundraising events.

15. A "kickback" was a payment or a gift given to someone for securing a business opportunity. A kickback could have been money, goods or services.

16. Co-Conspirator 1 was the Chief Executive Officer of Audiovisual Company 1, a Georgia corporation.

17. Co-Conspirator 2 ran Event Planning Company 1, a Broward County based business that did event planning and social media services. Co-Conspirator 2 used Accounting Software Company 1 to generate email notifications with invoices. All of Accounting Software Company 1's servers were outside the State of Florida.

3

18. Co-Conspirator 3 ran Merchandise Company 1, a Miami-Dade County based business that did merchandising and sold goods with personalized logos.

19. Bookstore 1 ran an online bookstore and listed its business address in Beacon, New York.

20. Graphic Designer 1 ran a Broward County based graphic design company. Graphic Designer 1 had an email account at Email Provider 2 ("Personal Email 2"). All of Email Provider 2's servers were outside the state of Florida.

21. Golf Cart Store 1 was a store based in Tampa, Florida, that specialized in golf cart sales, rentals, parts, and batteries.

22. Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Bookstore 1, Graphic Designer 1, and Golf Cart Store 1 were paid by the Foundation pursuant to purported invoices for goods and services approved by **CHARMAINE GATLIN**.

### The Atlanta- Based Civic Organization

23. Civic Organization 1 was a philanthropic organization headquartered in Atlanta, Georgia, that had local chapters around the country.

24. At no point was it the mission of Civic Organization 1 to serve as the fundraising arm of Jackson or to conduct "philanthropic activities that benefit the medical programs and services of the [Jackson] health system."

25. Civic Organization 1 had a tax-exempt status for a number of years. Between in or around 2013 and 2015, **CHARMAINE GATLIN** was employed by Civic Organization 1 as a vice president, according to publicly available tax returns for tax exempt entities.

4

26. Civic Organization 1 had annual conferences in 2019 (Las Vegas, Nevada), 2021 (virtual), 2022 (Hollywood, Florida), 2023 (Las Vegas, Nevada), and 2024 (Atlanta, Georgia).

27. **CHARMAIN GATLIN** was involved in the planning of Civic Organization 1 conferences in 2019, 2021, 2022, 2023, and 2024. For example, **GATLIN** served as the "Co-Producer" of Civic Organization 1's 2024 conference in Atlanta, Georgia.

28. Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and Book Store Owner 1 were vendors for Civic Organization 1 at various annual conferences held between 2019 and 2024.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated fully herein by reference.

2. From in or around October 2018, continuing through in or around December 2024, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**CHARMAINE GATLIN,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others known and unknown to the Grand Jury, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, misrepresentations and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication, in interstate and foreign commerce, by means of wire

5

communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

**PURPOSE OF THE CONSPIRACY**

3. It was the purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by, among other things, submitting and causing to be submitted false and fraudulent invoices to the Foundation for goods and services that were not provided to the Foundation, did not benefit the Foundation, and benefitted themselves instead of the Foundation.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the defendant and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

Overview

4. **CHARMAINE GATLIN** approved and submitted, or caused to be submitted, false and fraudulent invoices from vendors to the Foundation for goods and services that: (a) funded kickbacks to **GATLIN**; (b) were not provided to the Foundation or Jackson; (c) were provided to **GATLIN** or her relatives instead of the Foundation or Jackson; or (d) were provided to Civic Organization 1 or Religious Organization 1. The invoices approved by **GATLIN** made it falsely appear as though the Foundation or Jackson received the goods and services. The Foundation paid false and fraudulent invoices approved and submitted, or caused to be submitted, by **GATLIN**. In all, **GATLIN** caused the Foundation to pay at least $3.6 million for such false and fraudulent invoices, and **GATLIN** received at least $1 million in kickbacks.

Audiovisual Company 1

5. Between 2019 and 2024, **CHARMAINE GATLIN** and Co-Conspirator 1

submitted false and fraudulent invoices from Audiovisual Company 1 to the Foundation for audiovisual services that did not occur at Jackson or the Foundation.

6. Co-Conspirator 1 returned approximately half the payments received by Audiovisual Company 1 from the Foundation to **CHARMAINE GATLIN**'s personal bank account. To conceal the kickbacks, Co-Conspirator 1 and **GATLIN** created false invoices making it appear as though **GATLIN** did "event management" for Audiovisual Company 1 events at Jackson or the Foundation.

7. Between in or around January 2019 and 2024, Co-Conspirator 1 received over $2 million from the Foundation from false and fraudulent Audiovisual Company 1 invoices approved by **CHARMAINE GATLIN**. During that same time, **GATLIN** received approximately $1 million in kickbacks from Co-Conspirator 1 into her personal bank account. Many payments to Audiovisual Company 1 and the kickbacks to **GATLIN** were made via interstate wires.

<u>Event Planning Company 1 – Co-Conspirator 2</u>

8. Event Planning Company 1 submitted invoices to the Foundation, and received payment, for certain event planning services that were provided to the Foundation or Jackson, including event planning at an annual fundraising gala.

9. In addition to the event planning services provided to the Foundation or Jackson, **CHARMAINE GATLIN** asked Event Planning Company 1 to provide goods and services benefitting **GATLIN** and her relative personally, including: (a) creating a softball video for Family Member 1; (b) setting up a website for Softball Team 1; (c) making brochures for Softball Team 1; (d) hosting a virtual conference with brochures that **GATLIN** referred to as "Charmaine's Special Project"; and (e) assisting with the preparation of a digital "annual report" and resume for

7

GATLIN's Chief Executive Officer applications to other employers. GATLIN also engaged Co-Conspirator 1 to provide event planning services for Civic Organization 1 at its annual conferences.

10. **CHARMAINE GATLIN** did not personally pay Event Planning Company 1 or Co-Conspirator 2 for goods or services she and her relative received personally. Civic Organization 1 did not pay Event Planning Company 1 or Co-Conspirator 2 for many of the event planning services Event Planning Company 1 provided to Civic Organization 1. At times, **GATLIN** and Co-Conspirator 2 falsely and fraudulently invoiced the Foundation for goods and services provided to **GATLIN** or her relative personally or to Civic Organization 1 by making it appear as if the goods and services had been provided to the Foundation or Jackson.

<u>Merchandise Company 1- Co-Conspirator 3</u>

11. Merchandise Company 1 submitted invoices to the Foundation, and received payment, for certain merchandise that was ordered and provided to the Foundation or Jackson, including custom t-shirts and water bottles with Jackson logos.

12. In addition to the merchandise that was ordered and provided to the Foundation or Jackson, **CHARMAINE GATLIN** asked Merchandise Company 1 to provide her with luxury purses, wallets, hats, and shoes, from brands such as Gucci and Louis Vuitton, as well as Apple electronics. **GATLIN** and Co-Conspirator 3 falsified invoices to the Foundation to pay for the Gucci, Louis Vuitton, and Apple electronics, including by falsely invoicing the Foundation for items that were never provided to the Foundation or Jackson by Merchandise Company 1.

13. At times, **CHARMAINE GATLIN** ordered items from Merchandise Company 1 that were not requested by the Foundation or Jackson. For example, **GATLIN** approved an invoice from Merchandise Company 1 for approximately $55,101 for purported "trauma burn

8

giveaways" (listing 10,000 first aid kits) that was paid on or about September 26, 2022, out of a restricted donation fund only to be used for burn victims. These items were not requested by the Jackson medical staff who treated the burn victims. On or about September 30, 2022, **GATLIN** emailed Co-Conspirator 3 at Merchandise Company 1 with a link to a Louis Vuitton loop handbag stating: "This is the one she wants."

14. Every year between approximately 2016 until 2024, **CHARMAINE GATLIN** asked Merchandise Company 1 to ship school supplies to Riceboro, Georgia, often delivered to the address of a family member, to be given away at a yearly back-to-school rally hosted by Religious Organization 1 in Liberty County, Georgia, many with the logo of Religious Organization 1 (that does not reference the Foundation), including: t-shirts, uniforms, laptops, Apple AirPods, backpacks, paper, markers, pens, water bottles, gift cards, face masks and hand sanitizers. At times, **GATLIN** made it falsely appear on the Foundation invoices that the items were being used for a back-to-school event at Jackson North Medical Center. **GATLIN** and Co-Conspirator 3 also falsified the invoices for the items provided to Religious Organization 1 to conceal the purchase of electronics such as laptops.

15. In or around September 2024, when Foundation and Jackson employees began to closely review **CHARMAINE GATLIN**'s expenditures, she falsified an email from a Foundation board member, by forwarding the original email from the board member to her Foundation email and changing it, making it look like the board member approved two invoices from Merchandise Company 1 for over approximately $60,000.

Other Vendors

16. Bookstore 1 was a vendor at the Civic Organization 1 annual conferences.

9

**CHARMAIN GATLIN** falsified invoices from Bookstore 1, making it appear as though goods and services Bookstore 1 provided to Civic Organization 1 were provided to the Foundation and Jackson. For example, **GATLIN** changed invoices from Bookstore 1 for goods and services provided to Civic Organization 1 and made it look like the invoices were for a nurse's week meditation series and for mental health events at Jackson. The Foundation paid Bookstore 1 for these false invoices.

17.  **CHARMAINE GATLIN** hired Graphic Designer 1 to create flyers and other materials for Softball Team 2. **GATLIN** falsified the invoices she received from Graphic Designer 1 to make it look like the graphic design work was provided to the Foundation. The Foundation paid Graphic Designer 1 because of these false invoices.

18.  **CHARMAINE GATLIN** ordered a new rose gold colored golf cart with the serial number 7000214 from Golf Cart Store 1 for approximately $15,617.32. The rose gold colored golf cart was delivered to her Weston, Florida home on or about September 22, 2023. **GATLIN** submitted an invoice to the Foundation right around the same time two golf carts that belonged to Jackson were getting repaired by Golf Cart Store 1, listing the account as "transportation account," making it appear as though the new golf cart would be used by Jackson or the Foundation. The Foundation paid Golf Cart Store 1 for **GATLIN**'s new golf cart.

19.  As a result of the false and fraudulent representations made by **CHARMAINE GATLIN** and her co-conspirators, the Foundation paid at least $3.6 million for goods and services that: (a) funded kickbacks to **GATLIN**; (b) were not provided to the Foundation or Jackson; (c) were provided to **GATLIN** or her relatives instead of the Foundation or Jackson; or (d) were provided to Civic Organization 1 or Religious Organization 1.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-27
## Wire Fraud
## (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around October 2018, continuing through in or around December 2024, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**CHARMAINE GATLIN,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for **CHARMAINE GATLIN** and her accomplices to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent invoices to the Foundation for goods and services that were not provided to the Foundation, did not benefit the Foundation, or benefitted themselves instead of the Foundation.

## THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 19 of the Manner and Means Section of Count 1 are re-alleged and fully incorporated herein as a description of the scheme and artifice.

## USE OF WIRES

5.      On or about the dates specified below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **CHARMAINE GATLIN**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 2 | January 31, 2021 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 1, attaching invoices to Audiovisual Company 1 for **GATLIN**'s purported 2020 consulting services for the following: "Jackson Rehab Ribbon Cutting" (for $29,625), "MTI 50th Anniversary/Jungle Island" (for $21,625), "Virtual Conference Jackson Residents" (for $26,215), and "Jackson Covid Media Village" (for $43,562.50). |
| 3 | November 19, 2021 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 at Merchandise Company 1, with the subject "items that are needed" with the following items: 1 Louis Vuitton Horizons earphone case, 1 Louis Vuitton Ear phone pouch, 3 surface pro laptops, 2 four packs of Apple Airtags, 1 Apple pencil, 2 black Apple Watch Series 7 with wifi and cellular, and 2 Apple Watch cases. |
| 4 | April 3, 2022 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 at Merchandise Company 1 with the subject "LV Items" and a picture of a Louis Vuitton Horizon 55 suitcase, stating: "I need to 2 rolling bags. This one to replace the purse and wallet that was returned." |

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 5 | April 9, 2022 | Email from Co-Conspirator 1 to **CHARMAINE GATLIN** at Personal Email 1 attaching Invoice 704 from Audiovisual Company 1 for $44,280 for purported audiovisual services provided at the Foundation for "Hospital Rehab Dedication." |
| 6 | April 11, 2022 | Wire transfer for approximately $44,280 from Foundation Seacoast bank account ending in x1552 to a Wells Fargo account ending in ending in x7137 in the name of Audiovisual Company 1. |
| 7 | April 12, 2022 | Wire transfer for approximately $22,000 from Audiovisual Company 1 Wells Fargo bank account ending in x7137 to **CHARMAINE GATLIN**'s personal bank account at Bank of America ending in x5333. |
| 8 | April 25, 2022 | Email from Bookstore Owner 1 to **CHARMAINE GATLIN** via Personal Email 1, attaching an excel with Invoice JHF-04182022 for $12,000 for "2022 [Civic Organization 1] Employee Health and Wellness Webinar," that **GATLIN** later forwarded to her Foundation email. |
| 9 | May 6, 2022 | Wire transfer of $12,000 from a Foundation Seacoast bank account ending in x1552 to an account in the name of Bookstore 1 at JP Morgan Chase with a notation "JH-04182022," initiated approximately an hour and a half after **CHARMAINE GATLIN** sent an employee in the finance department a version of Invoice JHF-04182022 from Bookstore 1 that said "2022 Hospital/Nurses Week (May 6-12)" |
| 10 | June 15, 2022 | Email from Graphic Designer 1 via Personal Email 2 to **CHARMAINE GATLIN**'s Foundation Email, attaching invoice 375 for Softball Team 2's "16U & 18U Flyers", stating "I wish the girls all the luck in the world!!!" |
| 11 | July 7, 2022 | ACH transfer for $375 to Graphic Designer 1 from Foundation Seacoast bank account ending in x1552 (initiated after **CHARMAINE GATLIN** sent a June 22, 2022 email from her Foundation email stating "please process" with an invoice purporting to be invoice 375 from Graphic Designer 1 for a Jackson "Mind Your Health Flyer Design") |

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 12 | August 29, 2022 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 at Merchandise Company 1, requesting "items for hospital employee engagement survey" including two Apple watches, two iPad air's, 2 fitbits, a Louis Vuitton "on the go" bag, a Gucci "tote bag with leather details", and a Gucci "Tennis 1977 sneaker" in women's size 12. |
| 13 | September 30, 2022 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 at Merchandise Company 1: "This is the one she wants" with a link to the Louis Vuitton "Loop Handbag." |
| 14 | March 8, 2023 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 with the subject "[Religious Organization 1] 25th ANNIVERSARY 3dd REV" stating: "This is what she wants for the back to school rally. What about a packet; paper, composition book with logo, pen/pencil with the logo, a plastic water bottle with logo, a lanyard, hand sanitizer, markers? AirPods – 30, Laptops - 5." |
| 15 | April 21, 2023 | Email from FedEx to **CHARMAINE GATLIN** at Personal Email 1, with a tracking label estimating a delivery from Merchandise Company 1 in Miami, Florida to an address in Riceboro, "Georgia "C/O Charmaine" with reference listed as "[Religious Organization 1] LPTP GFT CRD." |
| 16 | September 8, 2023 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 at Merchandise Company 1, with the subject "Items needed" listing the following Louis Vuitton items with corresponding prices: Sac Plat 24H ($4,050), Twinny ($3,050), Fastline Messenger Blue ($2,670), Fasatline Messenger Black ($2,670), Boulogne ($2,370), Speedy Bandouliere 25 ($1,820), and LV Skate Sneaker Size 12 ($1,340). |
| 17 | September 20, 2023 | Wire in the amount of $15,617.32 for "New Golf Cart 2023" to Golf Cart Store 1 from Foundation Seacoast Bank account ending in x1552. |
| 18 | January 8, 2024 | Email from **CHARMAINE GATLIN** via Personal Email 1 telling Co-Conspirator 1: "Get it to $58,477. When you email it over ask for the status of the payment," in response to draft Audiovisual Company 1 invoice 920-ADD from Co-Conspirator 1 for an alleged "add on" extending the audiovisual equipment at the Jackson "Holiday Parties" two more "additional days" (totaling $50,172.50). |

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 19 | January 16, 2024 | Wire transfer for approximately $58,472.20 from a Foundation Northern Trust bank account ending x9073 to a Wells Fargo account ending in ending in x7137 in the name of Audiovisual Company 1. |
| 20 | January 18, 2024 | Wire transfer for approximately $25,000 from Audiovisual Company 1 Wells Fargo bank account ending in x7137 to **CHARMAINE GATLIN**'s personal bank account at Bank of America ending in x5333. |
| 21 | January 29, 2024 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 3 at Merchandise Company 1, with the subject "list of items" and pictures and prices of a Louis Vuitton "Remix Cap" ($690), Louis Vuitton Speaker Cooper ($2,230), Louis Vuitton Damoflage Cap ($760), Louis Vuitton "Remix Bucket Hat") ($690), Louis Vuitton Coussin PM purse ($4,350), and Helios Wedge Sandal Size 42 in the same pattern as the Coussin purse ($1,170). |
| 22 | May 14, 2024 | Email from **CHARMAINE GATLIN** via Personal Email 1 to an executive officer of Civic Organization 1 stating "I gave them a $45k budget this year," and forwarding an email from Co-Conspirator 2 with Event Planning Company 1's scope of work for the Civic Organization 1 2024 annual conference that included "on site-site social media," photography, videography, Facebook, and X, and Instagram. |
| 23 | May 17, 2024 | Email notification generated by Accounting Software Company 1 for Event Planning Company 1 to **CHARMAINE GATLIN**'s Foundation email with invoice 1283 for $40,257.76 for "Jackson Health Foundation Summer Activations" listing the services to include "on site-site social media," photography, videography, Facebook, and X, Instagram. |
| 24 | May 20, 2024 | Credit card payment of $40,257.76 from a Foundation credit card at Capital One Card ending in x8605 to Event Planning Company 1. |
| 25 | June 11, 2024 | Email from **CHARMAINE GATLIN** via Personal Email 1 to Co-Conspirator 2 writing "approved" in response to Co-Conspirator 2's email attaching an invoice for $4,400 for a "360 photobooth" at a Civic Organization 1 conference in Atlanta, Georgia at the Hyatt Regency on June 13 and 14. |

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 26 | June 19, 2024 | Email notification generated by Accounting Software Company 1 for Event Planning Company 1 to **CHARMAINE GATLIN**'s Foundation email with invoice x1289 for $4,400 for "360 Booth Rental Day 1 & Day 2 (Miami Swim Week – June 1-3). |
| 27 | June 21, 2024 | Credit card payment of $4,400 from a Foundation credit card at Capital One Card ending in x8605 to Event Planning Company 1. |

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 28-32
### Money Laundering
### (18 U.S.C. § 1957(a))

1. The General Allegations section and paragraphs 4 through 18 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates as to each count set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### CHARMAINE GATLIN

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, as set forth below:

| COUNT | APPROX. DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 28 | August 11, 2022 | ACH transfer of $10,620.81 from **CHARMAINE GATLIN**'s Bank of America account ending in x5333 to pay her personal American Express card. |

| COUNT | APPROX. DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 29 | December 5, 2022 | ACH transfer of $12,000 from **CHARMAINE GATLIN**'s Bank of America account ending in x5333 to pay her personal American Express card. |
| 30 | October 27, 2023 | ACH transfer of $16,410.19 from **CHARMAINE GATLIN**'s Bank of America account ending in x5333 to pay her personal American Express card. |
| 31 | January 18, 2024 | ACH transfer of $19,723.85 from **CHARMAINE GATLIN**'s Bank of America account ending in x5333 to pay her personal American Express card. |
| 32 | September 27, 2024 | ACH transfer of $12,000 from **CHARMAINE GATLIN**'s Bank of America account ending in x5333 to pay her personal American Express card. |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1.  The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **CHARMAINE GATLIN**, has an interest.

2.  Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3.  Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such violation, and any property traceable to such property.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

ELIZABETH YOUNG
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CHARMAINE GATLIN,

_____/
Defendant.

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [x] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __6__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:
   (Check only one)
   - I  [ ] 0 to 5 days
   - II [x] 6 to 10 days
   - III [ ] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V  [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [x] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
ELIZABETH YOUNG
Assistant United States Attorney
SDFL Court ID No. A5501858

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** CHARMAINE GATLIN

**Case No:** _____

Count # 1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** Twenty (20) Years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine: $250,000 or twice the gain or loss for the offense**

Counts # 2-27:

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** Twenty (20) Years as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine: $250,000 or twice the gain or loss for the offense**

Counts # 28-32:

Money Laundering

Title 18, United States Code, Section 1957(a)
* **Max. Term of Imprisonment:** Ten (10) Years as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine: $250,000 or twice the value of the Laundered Funds**

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.