UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CR-20220-BB

UNITED STATES OF AMERICA

vs.

CHARMAINE GATLIN,

    Defendant.
_____/

## FACTUAL PROFFER

The Defendant, Charmaine Gatlin (hereinafter referred to as the "Defendant"), her counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

### Jackson Health Foundation and the Defendant

1.    Jackson Health System ("Jackson") was a nonprofit medical system that served Miami-Dade County. Jackson was funded through a sales tax, philanthropic contributions, and federal government programs, among other sources. Jackson was managed by the Public Health Trust of Miami-Dade County. Jackson Health Foundation (the "Foundation") served as the fundraising arm of Jackson. Through donations, the Foundation helped fill the gaps of capital projects and programmatic needs of Jackson that were not financed by public support. One way the Foundation solicited donations was through fundraising events.

2.    The Defendant served as the Chief Operating Officer ("COO") of the Foundation from in or around October 2014, until her termination in or around November 2024. During that time, she was a resident of Broward County. Between 2018 and 2024, the Defendant received a base salary between approximately $185,000 and $290,000. The Defendant had the authority and discretion to approve invoices to vendors that provided goods and services for the Foundation, including at

Foundation fundraising events.

3. In 2014, at the beginning of her employment, the Defendant signed a conflict of interest policy with the Foundation acknowledging that: "An actual conflict of interest occurs when an employee is in a position to influence a decision that may result in personal gain for that employee or for a relative as a result of Jackson Memorial Foundation's fundraising operations." A relative was defined as "any person who is related by blood or marriage or whose relationship with the employee is similar to that of persons who are related by blood or marriage."

4. The Defendant signed employment agreements acknowledging that the Foundation was "the fundraising arm of Jackson Health System" and that the Foundation conducted "philanthropic activities that benefit the medical programs and services of the health system."

### The Atlanta- Based Civic Organization

5. Civic Organization 1 was a philanthropic organization headquartered in Atlanta, Georgia, that had local chapters around the country. At no point was it the mission of Civic Organization 1 to serve as the fundraising arm of Jackson or to conduct "philanthropic activities that benefit the medical programs and services of the [Jackson] health system."

6. Civic Organization 1 had annual conferences in 2019 (Las Vegas, Nevada), 2021 (virtual), 2022 (Hollywood, Florida), 2023 (Las Vegas, Nevada), and 2024 (Atlanta, Georgia). The Defendant was involved in the planning of Civic Organization 1 conferences in 2019, 2021, 2022, 2023, and 2024.

### ASD - Yergan Jones

7. Yergan Jones, a resident of Georgia, was the Chief Executive Officer of American Sound Design ("ASD"), a Georgia corporation. Between 2019 and 2024, the Defendant and Yergan Jones submitted false and fraudulent invoices from ASD to the Foundation for audiovisual event

2

services that did not occur at Jackson or the Foundation, totaling approximately $2,138,055.

8. At times, the Defendant instructed Yergan Jones how to falsify invoices to the Foundation for services ASD did not provide. For example, on November 25, 2023, the Defendant emailed Charmaine Gatlin's personal email with draft invoice number 920 for alleged audiovisual services at "Jackson Health System Holiday Parties" in December 2023. On November 26, 2023, the Defendant responded: "Take $3k from South and $3k West and add the $6k to Main total," and then: "Make it an odd number as well. 69,240." On January 7, 2024, Yergan Jones emailed the Defendant's personal email with draft invoice 920-ADD for an alleged "add on" extending the audiovisual equipment at the Jackson "Holiday Parties" two more "additional days" (totaling $50,172.5). The Defendant responded: "Get it to $58,477. When you email it over ask for the status of the payment." Yergan Jones did not provide the invoiced audiovisual services at Jackson or the Foundation.

9. In another example, on August 8, 2019, the Defendant sent Yergan Jones an email from her personal email with the subject "Opportunity." In the body of the email, the Defendant wrote: "We had company donate stage sound and lights for back to school event." The Defendant then wrote the following in the email: "Back to School Block Party, August 3rd, 11 am - 3 pm, [school address], Stage, sounds and lights, (You know what to put), $30,250." Yergan Jones submitted an invoice for that same amount to the Foundation, for alleged sound and lighting services at a back to school event that were never provided, the Defendant approved the invoice, and the Foundation paid the invoice.

10. Yergan Jones kicked back approximately half the payments he received from the Foundation to the Defendant's personal bank account. These payments were received by ASD via about 53 payments, including 51 wire transfers and two automated clearinghouse (ACH) transactions all deposited to an ASD Wells Fargo bank account ending 7137. Throughout this time, after receiving

the deposits from the Foundation, Yergan Jones then paid approximately $1,058,439 (or 49.5% of the amount ASD received from the Foundation) in kickbacks to the Defendant in a series of payments closely following the deposits from the Foundation. These kickback payments were transmitted via interstate wires.

11. To conceal the kickbacks, the Defendant sent Yergan Jones false invoices making it appear as though she was consulting for ASD. For example, on January 31, 2021, the Defendant emailed Yergan Jones false invoices making it look like Charmaine Gatlin consulted for ASD including: "Jackson Rehab Ribbon Cutting" (for $29,625), "MTI 50th Anniversary/Jungle Island" (for $21,625), "Virtual Conference Jackson Residents" (for $26,215), and "Jackson Covid Media Village" (for $43,562.50). These payments were kickbacks to the Defendant for paying ASD via the Foundation.

### Event Planning Company 1 – Co-Conspirator 2

12. Co-Conspirator 2 ran Event Planning Company 1, a Broward County based business that did event planning and social media services. At times, the Defendant and Co-Conspirator 2 falsely and fraudulently invoiced the Foundation for goods and services provided to Civic Organization 1 by making it appear as if the goods and services had been provided to the Foundation or Jackson. For example, on 5/17/24, the Defendant sent an email on her personal email to an executive officer of Civic Organization 1 stating "I gave them a $45k budget this year," and forwarding an email from Co-Conspirator 2 with Event Planning Company 1's scope of work for the Civic Organization 1 2024 annual conference that included "on site-site social media," photography, videography, Facebook, and X, and Instagram. At the Defendant's instruction, Co-Conspirator 2 submitted a false invoice to the Foundation that made these services provided to Civic Organization 1 appear as "Jackson Health Foundation Summer Activations."

### Merchandise Company 1- Co-Conspirator 3

13. Co-Conspirator 3 ran Merchandise Company 1, a Miami-Dade County based business that did merchandising and sold goods with personalized logos.

14. In addition to merchandise that was ordered and provided to the Foundation or Jackson, the Defendant asked Merchandise Company 1 to provide her with luxury purses, wallets, hats, and shoes, from brands such as Gucci and Louis Vuitton, as well as Apple electronics. The Defendant and Co-Conspirator 3 falsified invoices to the Foundation to pay for the Gucci, Louis Vuitton, and Apple electronics, including by falsely invoicing the Foundation for items that were never provided to the Foundation or Jackson by Merchandise Company 1. Merchandise Company 1 provided the Defendant with these luxury items to keep the Foundation's business because it was the Defendant who approved the Foundation invoices. For example, on 8/9/2022, the Defendant sent an email to Co-Conspirator 3 at Merchandise Company 1 via her personal email, requesting "items for hospital employee engagement survey" including two Apple watches, two iPad air's, 2 fitbits, a Louis Vuitton "on the go" bag, a Gucci "tote bag with leather details", and a Gucci "Tennis 1977 sneaker" in women's size 12. These items were for the Defendant and her family and friends.

15. At times, the Defendant ordered items from Merchandise Company 1 that were not requested by the medical staff at the Foundation or Jackson. For example, the Defendant approved an invoice from Merchandise Company 1 for approximately $55,101 for purported "trauma burn giveaways" (listing 10,000 first aid kits) that was paid on or about September 26, 2022, out of a restricted donation fund only to be used for burn victims.

### Other Vendors

16. Bookstore 1 ran an online bookstore and listed its business address in Beacon, New York. Bookstore 1 was a vendor at the Civic Organization 1 annual conferences. On 2/20/2019, the

Defendant emailed the owner of Bookstore 1: "Send me your invoice and I will pay it from my foundation. Send invoice for $14,000 in description put Deposit $7,000 balance due May 1. Jackson Health Foundation reprint of souvenir books." Bookstore 1 owner emailed an invoice for $14,000 to the Defendant's personal email with an invoice description as "Invoice for 2019 [Civic Organization 1]" for a "June 4-6 High Profile/Celebrity Speakers and panelists for women of power." The Defendant changed the invoice to read "reproduction and digitalizing of the Jackson Centennial Tabletop books for upcoming conference," approved it, and submitted it for payment the Foundation. The Foundation approved this invoice and other false invoices from Bookstore 1.

17. Website Designer 1 ran a website design company based in Georgia. Website Designer 1 was a vendor at the Civic Organization 1 annual conferences. The Defendant falsified invoices from Website Designer 1, making it appear as though website services Website Designer 1 provided to Civic Organization 1 were provided to the Foundation and Jackson. For example, on 1/25/23, after the Defendant received a statement of work from Website Designer 1 for website design services for Civic Organization 1, the Defendant responded over her personal email: "Remove [Civic Organization 1] name and replace with the word client. Then for the signature line add my name – Charmaine Gatlin and Jackson Health Foundation. My foundation is going to pay the bill." Website Designer 1 redid the statement of work to make it look like the website services were being provided to the Foundation and the Foundation paid false invoices for website design services.

18. Graphic Designer 1 ran a Broward County based graphic design company. The Defendant also hired Graphic Designer 1 to create flyers and other materials for her family member's softball team. The Defendant falsified the invoices she received from Graphic Designer 1 to make it look like the graphic design work was provided to the Foundation for a "Mind Your Health" event. The Foundation paid Graphic Designer 1 because of these false invoices.

19.     The Defendant ordered a new rose gold colored golf cart with the serial number 7000214 from Golf Cart Store 1 for approximately $15,617.32. The rose gold colored golf cart was delivered to her Weston, Florida home on or about September 22, 2023. The Defendant submitted an invoice to the Foundation right around the same time two golf carts that belonged to Jackson were getting repaired by Golf Cart Store 1, listing the account as "transportation account," making it appear as though the new golf cart would be used by Jackson or the Foundation. The Foundation paid Golf Cart Store 1 for the Defendant's new golf cart.

20.     As a result of the false and fraudulent representations made by the Defendant and her co-conspirators, the Foundation paid at least $4.3 million for goods and services that: (a) were not provided to the Foundation or Jackson; (c) were provided to the Defendant or her relatives instead of the Foundation or Jackson; or (d) were provided to Civic Organization 1.

21.     Based upon the foregoing facts, which establish all the elements of the charge to which the Defendant is pleading guilty, the Government would prove the Defendant's guilt at trial.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 9/11/25   By: _____
ELIZABETH YOUNG
ASSISTANT UNITED STATES ATTORNEY

Date: 9/11/25   By: _____
DAVID HOWARD
COUNSEL FOR CHARMAINE GATLIN

Date: 9/11/25   By: _____
CHARMAINE GATLIN
DEFENDANT